*F. W. Viehe,* for appellant.

*N. F. Malott* and *T. R. Cobb,* for appellee.

———————⊙———————

## Usher *v.* Sands.

CONTRACT.— *Construction of.—Estoppel in Pais.*—Certain land owned by A. was sold on execution and purchased by his brother, B., in 1845, A. continuing in possession. He conducted a business in the same county from 1844 to the time of his death, in 1859, part of the time in the name of his said brother, who resided in another state, part of the time in the names of himself and said brother, and the residue of the time in the name of his own son. In 1846, B. executed to A. a title-bond for the conveyance of said land in fee simple by the former to the latter, on the payment of the purchase-money, eighteen hundred dollars of which was paid at the time, and for the balance, two hundred dollars, a note payable in four years was given. In 1853, B. made a will, wherein he gave said land and all his real and personal estate to his wife. In 1856, he made a codicil, in which he gave said land to A., on condition that the latter would pay said wife of B. one thousand dollars, with interest from September 15th, 1846, and indemnify B.'s estate from all liabilities created in the conduct of said business, and execute a bond to secure the performance of these conditions. B. died in 1856, leaving his said wife surviving; and said will, with its said codicil, was probated the same year. An attorney, who had for several years

Usher *v.* Sands.

been prosecuting suits in favor of one C. and his creditors, to reach said land as the property of A., said suits being resisted on the ground that the property belonged to B., in 1857, acting in the interest of C. procured from the widow of B. a deed of conveyance without covenants, to himself, in fee simple, for all the lands and estate of every kind in the county wherein said land is situated or elsewhere in this State, to which the grantor, as widow, heir, or devisee of said B., was in any way entitled; the grantor making the grantee her attorney in fact, with authority in her name, or otherwise, to possess himself of the property so conveyed, and revoking all other appointments. In consideration of this deed, the grantee executed to the grantor an agreement (on which this suit was brought by said grantor against said grantee), stipulating, that in case A. should not accept the provision of said will in his favor, then said attorney should, out of the proceeds of said property assigned and conveyed to him, pay said widow of B. one thousand dollars, with interest from September 15th, 1846; and that said grantee would pay all costs and attorney's fees growing out of the litigation aforesaid about the property conveyed, and indemnify the grantor against all liability growing out of the claims of C. and his creditors. Afterwards, in the same year, said attorney, believing, as he testified in this action, that an inchoate right of dower of A.'s wife was the only incumbrance on the land, procured a deed of conveyance of said land from A. and his wife who were in possession, which they then delivered to said attorney; in which deed it was stated, that the object thereof was to convey and release to the grantee any and all claims, right, and interest, present or prospective, of the grantors or either of them, in said land, so that they nor either of them nor the heirs or assigns of either of them, should ever have or make any claim or title to said land or any part thereof, against the grantee, his heirs or assigns. In consideration of this conveyance, said attorney gave his note to A.'s wife, for one thousand dollars, which was fully paid before October, 1858. C. conveyed all his interest in said land to said attorney, who assumed to pay certain sums to C.'s creditors. In October, 1858, said attorney sold said land to one D., at public auction, for four thousand six hundred dollars, of which three thousand two hundred and sixty-two dollars was paid at the time, and delivered possession to D., who was still in possession at the commencement of this action. In 1855, said title-bond was assigned by A. to his said son, who held it, and, though he knew all about said attorney's purchase before the purchase-money was paid over, concealed the existence of the bond, until after the death of A., in 1859 or 1860. In 1861, D. purchased in said bond, paying said son seven hundred dollars therefor, and instituted a suit thereon against said attorney, in which there was a decree by default ordering a conveyance, which was made by a commissioner.

*Held,* that under these facts said widow of B. was entitled to recover on said agreement executed to her by said attorney.

APPEAL from the Vigo Common Pleas.

GREGORY, J.—This was a suit by Sands against Usher on an agreement in writing, executed by the latter to the former under these circumstances:—One Lewis H. Sands owned a farm in Putnam county. He failed in business. The farm was sold on execution, in 1845, to one Henry N. Sands (the husband of the appellee), who resided in Kentucky. Lewis H. Sands continued in the possession of the farm. He conducted business from 1844 to the time of his death, in 1859, in Greencastle, a part of the time in the name of his brother, Henry N. Sands, a part of the time in the names of himself and his brother, and the residue of the time in the name of his son, James H. Sands. The appellant, as the attorney of one Allison, had been for years prosecuting suits in the Putnam Circuit Court in behalf of Allison and his creditors, the object of which was to reach the farm, as the property of Lewis H. Sands. The suits had been resisted on the ground that the farm belonged to Henry N. Sands, and not to Lewis. In 1853, Henry N. Sands made a will, bequeathing the farm, together with all the residue of his real and personal estate, to his wife, Eleanor Sands, the appellee. In April, 1856, the former made a codicil, in which he bequeathed the farm to his brother, Lewis H., on condition that he would pay his wife, Eleanor, one thousand dollars, with interest from the 15th of September, 1846, and would indemnify his estate from all liabilities created in the conduct of the business at Greencastle, and would, execute a bond to secure the performance of these provisions of the codicil. Henry N. Sands died in 1856, leaving the appellee, his widow, surviving him. The will, with its codicil, was probated in Jefferson county, Kentucky, on the 2d of June, 1856. In June, 1857, the appellant, acting in the interest of his client, Allison, procured from the appellee a deed of conveyance, without covenants, to himself in fee, for " all the lands and estate of every kind and nature in the county of Putnam, Indiana, or elsewhere in the State of Indiana, and of which the said Eleanor, as widow, heir, or devisee of her late husband, Henry N. Sands, deceased, is in any

way entitled." In this deed, Usher is made the attorney in fact for the grantor, with authority in her name, or otherwise, to possess himself of all the property therein conveyed. There is also a revocation of all other appointments. In consideration of this conveyance the agreement sued on was executed. It stipulates, " that in case the said Lewis H. Sands shall not accept the provision of said will in his favor, the said Usher shall, out of the proceeds of said property assigned and conveyed, pay to said Eleanor the sum of one thousand dollars, with interest from the 15th day of September, A. D. 1846, being the sum mentioned in said will to be paid to her." Usher, in this agreement, binds himself to pay all costs and attorneys' fees growing out of the litigation in the Putnam Circuit Court in and about the property conveyed; and to indemnify the appellee against all liability growing out of the claims of Allison and his creditors. On the 8th of October, 1857, Usher procured a deed of conveyance from Lewis H. Sands and his wife, who were at the time in the actual possession thereof, for the farm embraced in the conveyance from the appellee. In this deed of Sands and wife to Usher, it is stated, that " the object and intent of this deed is to convey and release to the said party of the second part any and all claims, right, and interest, present or prospective, which the said parties of the first part, or either of them has, or may or can have, in said lands above described, so that the said parties of the first part, nor either of them, nor the heirs or assigns of either of them shall ever have, or make any claim or title to said lands, or any part thereof, against said party of the second part, his heirs or assigns."

Mr. Usher, in his testimony, says, " it was before the decision of the Supreme Court upon the subject, that I bought of Lewis H. Sands and wife, and I thought that Mrs. Lewis H. Sands had an inchoate right of dower in the lands at the time. I did not know that Sands and wife had any other rights to the land at the time I took their deed, but

I feared from his conduct in refusing me possession that there might be something else, and so I wrote the deed as it appears, covenanting against his heirs and assigns." Usher gave his note to Mrs. Lewis H. Sands for one thousand dollars in consideration of this conveyance, which was fully paid before October, 1858. Allison conveyed all his interest in the farm to Usher, who assumed to pay certain sums to Allison's creditors. On the 14th of October, 1858, Usher sold the farm to one Donnohue, at public auction, for four thousand six hundred dollars.

Usher took possession of the farm at the time of the conveyance to him by Lewis H. Sands and wife, and delivered possession to Donnohue at the time of the sale to him, who has continued in the possession ever since.

The principal defense relied on by Usher, to defeat the recovery on his agreement with the appellee, grows out of a title-bond, executed by Henry N. Sands to Lewis H. Sands in 1846, conditioned, upon the payment of the purchase-money, that the former would convey to the latter the farm in fee simple. Eighteen hundred dollars of the purchase-money was paid at the time, and the balance, two hundred dollars, was secured by a note payable in four years. It is claimed that this title-bond was assigned by Lewis H. Sands to his son, James H. Sands, in 1855, who held it at the time of the conveyance from the appellee to the appellant. It is claimed, that in 1861, Donnohue purchased in this outstanding equitable title, paying therefor seven hundred dollars to Capt. James H. Sands. A suit on this bond was instituted in the Putnam Circuit Court by Donnohue against Usher, in which there was a decree by default, ordering a conveyance, which was made by a commissioner.

On a trial of the issues, in the case at bar, the jury found specially, among other things, as follows: "We, the jury, find that the defendant Usher did sell one of the tracts of land, conveyed to him by the plaintiff, to the defendant Donnohue, for four thousand six hundred dollars. Second; the defendant Usher did receive of defendant Donnohue

money on said sale, to the amount of three thousand two hundred and sixty-two dollars. Third; the defendant Usher did put the said Donnohue in possession of said farm immediately after the sale, and said Donnohue has been continually in possession ever since. Fourth; the said Donnohue was in possession of said farm when he purchased said bond of said James H. Sands; said Donnohue paid said Sands seven hundred dollars for said bond."

It is contended by the appellant, that his agreement, and the deed of the appellee to him, must be construed together as one instrument; that the true construction of it is, "that the plaintiff undertook to convey to defendant an intrinsically valuable and salable interest in property which defendant could, by sale, convert into money, in order to the performance of his part of the agreement." Read in the light of the surrounding circumstances, we think the agreement will bear no such construction. Usher was acting in the interest of one who had for years been asserting that Henry N. Sands had no interest in the farm, but that it belonged to Lewis H. Sands, and against this claim Usher bound himself to indemnify his grantor, the appellee. Usher testified, that his whole trade with the appellee proceeded upon the idea that the inchoate right of dower of Mrs. Lewis H. Sands was all the outstanding incumbrance. There was no other outstanding title, except that against which Usher covenanted to indemnify his grantor. The title-bond was of no validity against Usher or his grantee. The evidence discloses the fact, that the existence of this bond was concealed by James H. Sands for more than two years after Usher's purchase of the land from Lewis H. Sands and wife. James H. Sands knew all about Usher's purchase before the purchase-money was paid over; he said nothing about the title-bond until after the death of his father, in 1859 or 1860. Usher's conveyance from Lewis H. Sands and wife, with the full payment of the purchase-money, was a complete defense for him against this outstanding title-bond. The appellee was no party to the decree of the

Putnam Circuit Court, and the decree did not bind her, although she knew of the pendency of the suit. The pleadings are voluminous. The action of the court in sustaining demurrers to a number of the paragraphs of the answer is complained of, but our view of the construction of the agreement and the rights of the parties as to the outstanding title-bond disposes of all the questions argued by counsel. It was not necessary for Eleanor Sands to have had a valid title in the lands conveyed; it was enough, for the purpose of this action, that she had a colorable title out of which Usher made enough to pay her the amount of her claim.

We think that the evidence shows that the appellee had, at least, a colorable title to the farm, under the will; and that Usher, by having her conveyance, was enabled to make some thirty-six hundred dollars over and above the amount paid to Mrs. Lewis H. Sands. We think that substantial justice was done in the court below. There is a question made on the admissibility in evidence of a letter from Lewis H. Sands to one Caldwell, written after the conveyance from the former and his wife to Usher. Under our view of the case, the letter was of no significance and could have had no influence on the verdict.

Judgment affirmed, with costs.

Frazer, C. J.—I doubt the correctness of the judgment of affirmance; and it does not seem to me that all the questions as to the sufficiency of the various paragraphs of the answer, which are before us, can be decided upon the grounds stated in the opinion of the majority of the court.

J. P. Usher, for appellant.

J. P. Baird, C. Cruft, and W. Mack, for appellee.